UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In Re:

Quantum Leap Restaurants, Inc.;                    Case No.:
Sioux Restaurants, LLC,                            Case No.:

                                                              Chapter 11
                      Debtors.           Joint Administration Pending

## MOTION FOR EXPEDITED HEARING AND TO LIMIT
## NOTICE ON FIRST DAY MOTIONS

Quantum Leap Restaurants, Inc. and Sioux Restaurants, LLC, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), by their counsel James D. Sweet, Rebecca R. DeMarb and Laura D. Steele of Kerkman Dunn Sweet DeMarb ("KDSD"), hereby submit this Motion (the "Expedited Hearing Motion") for the entry of an Order granting an expedited hearing on the following:

    I.    Motion To Approve Agreed Interim Order Pursuant to Sections 105(a), 362 and 363 of the Bankruptcy Code Authorizing Use of Cash Collateral and Granting Relief;

    II.    Motion to Authorize Payment of Pre-Petition Employee Wages;

    III.    Motion for Utility Procedures;

    IV.    Motion to Honor Customer Obligations;

    V.    Motion to Establish Shortened Service List;

    VI.    Motion for Joint Administration;

    VII.    Motion to Continue Cash Management System; and

VIII.   Motion to Extend Time to File Schedules and Statement of Financial Affairs (collectively, the "First Day Motions").

The Debtors have also asked the Court to enter an order allowing the Debtors to Limit Notice of the First Day Motions. Copies of the First Day Motions have been filed concurrently with this Motion. The grounds for this Motion authorizing an Expedited Hearing on the aforementioned Motions are set forth herein:

## Background

1. On the date of this Motion (the "Petition Date"), the Debtors filed their Petitions for protection pursuant to Chapter 11 of Title 11 of the United States Code.

2. Debtors are continuing in possession of their property and operating and managing their businesses pursuant to §§ 1107 and 1108 of the U.S. Bankruptcy Code (the "Bankruptcy Code").

3. A creditors' committee has not been established and a trustee has not been appointed.

4. On the Petition Date, Debtors filed, among other First Day Motions, a Motion for Joint Administration of their Chapter 11 cases.

5. The lead Debtor, Quantum Leap Restaurants, Inc., is a Wisconsin corporation headquartered in Eau Claire, Wisconsin (the "Corporation"). The other Debtor, Sioux Restaurants, LLC ("Sioux"), is a Wisconsin limited liability company and is wholly owned by the Corporation because the Corporation is the sole member of Sioux. Thomas G. Larson ("Mr. Larson") is the sole shareholder of the Corporation.

6. The Corporation leases and operates six (6) TGI Friday's™ ("TGIF") restaurants, all of which are located in Wisconsin. These restaurants are located in Onalaska, Madison, Middleton, Greenfield, Brookfield and Appleton. Sioux leases and operates, is the franchisee for, and holds the licenses for food and alcohol at two TGIF restaurants, one in Fargo, North Dakota, and the other in Rapid City, South Dakota.

7. The Debtors use a combined cash management system. The Corporation's restaurants and Sioux's restaurants all deposit revenue into accounts in the name of the Corporation. Most of the Debtors' common vendors are paid by the Corporation. The bank accounts are held at US Bank and Peoples State Bank of Wisconsin. The Corporation employs all of the employees at the Debtors' restaurants, approximately 650 employees in total.

8. The Debtor's assets consist primarily of franchise agreements, commercial leases, equipment, office furnishings, inventory, cash and accounts receivable. Debtors do not own any real estate.

9. On the Petition Date, Debtors were liable to GE Capital Franchise Finance ("GE") as follows:

    a. Quantum Leap Restaurants, Inc., was liable to GE pursuant to four loan agreements dated November 9, 2006, in the total original principal amount of approximately $6.015 million. On the Petition Date, the total owed to GE by the Corporation was

approximately $3.420 million. In addition, the Corporation guaranteed the obligations of Sioux and other non-debtor subsidiaries of the Corporation to GE.

    b.    Sioux was liable to GE, pursuant to two notes dated November 9, 2006, in the total original principal amount of $2.591 million. On the Petition Date, the total owed to GE by Sioux was approximately $1.46 million. In addition, Sioux guaranteed the debt of the Corporation to GE.

10.    On the Petition Date, the Corporation was liable to Peoples State Bank of Wisconsin (the "Bank") pursuant to a line of credit dated October 29, 2012. On the Petition Date, the total owed to the Bank by the Corporation was approximately $557,878.

11.    GE claims a security interest in substantially all of the Debtors' assets pursuant to various security agreements, mortgages of leasehold interests and assignments of rents. GE is the Debtor's primary secured creditor.

12.    In addition, the Bank filed a UCC-1 Financing Statement with regard to the assets of the Corporation on November 11, 2012. The Bank's security claim appears to be subordinate to that of GE.

13.    In addition to their secured creditors, Debtors are indebted to Carlson, Inc. ("Carlson"), their franchisor, pursuant to the eight TGIF Franchise Agreements that relate to the Debtors' eight restaurants (the "Franchise Agreements"). On the

4

Petition Date, Debtors were indebted to Carlson in the amount of approximately $612,178 for past due payments pursuant to the various franchise agreements.

14. The Debtors have experienced cash flow problems for several years. Debtors' cash flow problems initially stemmed from the nationwide economic downturn that began in 2008. The recovery of Debtors' restaurants has been uneven, with healthy restaurants supporting the debts associated with restaurants that do not currently cash flow. Since 2012, the Corporation and its various subsidiaries have closed four poorly performing restaurants. Further, the Debtors have struggled with the size and scope of their debt service, the sluggish economic recovery of the casual restaurant industry, and increased advertising costs.

15. By restructuring their secured Debts, freeing themselves of legacy costs associated with closed stores, and taking advantage of continued economic recovery, Debtors intend to successfully reorganize through Chapter 11.

I. <u>Motion To Approve Agreed Interim Order Pursuant to Sections 105(a), 362 and 363 of the Bankruptcy Code Authorizing Use of Cash Collateral and Granting Relief</u>

16. Debtors need to use operating funds generated by the restaurants to finance their operations. The Debtors have virtually no cash with which to operate that is not collateral of its secured creditors. In fact, Debtors believe that all of their assets, including inventory and accounts receivable, have been pledged to their pre-petition lenders.

17. If the Debtors are unable to obtain immediate post-petition financing, use cash collateral, and grant adequate protection to their pre-petition secured lenders, they will be unable to function and they will then have no alternative but to cease operations. For example, Debtors need to pay vendors this week for food and alcohol deliveries, and its next payroll is due October 21, 2013. If Debtors cannot make these payments, they will close their doors.

II. <u>Motion to Authorize Payment of Pre-Petition Employee Wages</u>

18. The Corporation is the employer for all of the employees who work for each of the Debtors. In total, the Corporation employs approximately 650 employees in Wisconsin, North Dakota, and South Dakota at eight different locations.

19. Prior to filing its Chapter 11 case, the Debtors had been paying its employees regularly. The Debtors filed in the middle of its regular and customary salary and hourly wage payroll cycle. Employees are owed salary and wages for employment services performed prior to the filing, but which are due to be paid after

the filing. The Debtors must meet this payroll obligation within days of filing to continue operating.

### III. Motion for Utility Procedures

20. The Corporation pays for utility services for gas, electricity, cable television and telephones at the eight locations. Debtors must continue to use these utility services to continue operating its business. As of the Petition Date, the Debtors are current on payment for all such services received and billed by the utilities pre-petition. Utility providers are owed sums for services provided prior to the Petition Date that have not yet been billed, but that are due to be billed and paid after filing.

21. Significant delay in paying utility bills will disrupt Debtors' relationships with the utility service providers and its ability to conduct business. It may also require Debtors to submit costly utility deposits as a means to provide adequate assurance of future performance under Section 366 of the Code. Thus, a delay in paying such bills would undermine the success of this reorganization and impair the Debtors' going concern value.

22. In addition, to avoid business disruption, Debtors are seeking the approval of a procedure to provide adequate assurance of future payment.

### IV. Motion to Honor Customer Obligations

23. The Debtors regularly honor gift cards within the T.G.I. Friday's™ chain of restaurants. Allowing the Debtors to accept gift cards from these customers will preserve the value of the Debtors' business and will not impair the creditors' rights.

V.   <u>Motion to Authorize Shortened Service List</u>

24.   There are at least one thousand (1,000) creditors statutorily entitled to Notice in this case. Providing service of every motion to all creditors would be impractical and unreasonably costly.

VI.   <u>Motion for Joint Administration</u>

25.   The Corporation is the sole member of Sioux. For the reasons stated in the Motion, joint administration of these cases is appropriate under Rule 1015(b)(4), and the Debtors are requesting it on a first day basis.

VII.   <u>Motion to Continue Cash Management System</u>

26.   The Debtors seek to minimize disruption to their business operations by maintaining their existing cash management systems. Delay in preserving the existing cash management systems even for a couple of days would severely impair the Debtors' ability to operate.

VIII.   <u>Motion to Extend Time to File Schedules and Statement of Financial Affairs</u>

27.   Due to the complexity of the Debtors' operations, and for the reasons stated in the Motion seeking additional time to file schedules, the relief requested is appropriate.

IX.   <u>Limiting Notice</u>

28.   The Debtors also request that this Court enter an order allowing the Debtors to Limit Notice on the aforementioned Motions.

29. The Debtors request that they be allowed to Limit Notice to the Secured Creditors, the United States Trustee, and as many of the 20 largest Unsecured Creditors as the Debtor can locate via facsimile, email, or overnight mail, the lessors, the franchisor, Utility providers and taxing authorities.

30. Attempting to locate and give Notice to all of the Debtors' creditors would be unreasonably difficult and expensive.

**WHEREFORE,** Debtors respectfully move this Court for entry of an Order granting the relief requested herein and such further relief as is just and proper.

Dated this \_\_\_ day of October, 2013.

          KERKMAN DUNN SWEET DeMARB
          Attorneys for Debtors

          By: _____
          James D. Sweet
          State Bar No. 1017557
          Rebecca R. DeMarb
          State Bar No. 1026221
          Laura D. Steele
          State Bar No. 1065702
          121 S. Pinckney Street, Suite 525
          Madison, WI 53703
          (608) 310-5502